# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ROBERT M. BLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-00204 |
| ) | Judge Sharp |
| MEHARRY MEDICAL COLLEGE, ) | |
| ) | |
| Defendant, ) | |

## MEMORANDUM

Pending before the Court is Plaintiff Robert Block's ("Dr. Block") Motion to Alter or Amend. (Docket No. 137). Dr. Block requests this Court to reverse the Court's Order granting summary judgment to Defendant Meharry Medical College ("Meharry"). Meharry filed a Response in Opposition, (Docket No. 143), and Dr. Block replied, (Docket No. 145). For the following reasons, the Court will deny Dr. Block's Motion to Alter or Amend.

## LEGAL STANDARD

To prevail on a Rule 59(e) motion to alter or amend a judgment, a party must show "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" Betts v. Costco Wholesale Corp., 558 F.3d 461, 474 (6th Cir. 2009) (quoting Henderson v. Walled Lake Cons. Sch., 469 F.3d 479, 496 (6th Cir. 2006)).

The Rule 59(e) vehicle does not exist to provide the movant with a second opportunity to make its previous argument, that is, a Rule 59(e) motion "is not an opportunity to re-argue a case." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, the movant should not use a Rule 59(e) motion to raise or make arguments "which

1

could, and should, have been made before judgment issued." Id.; see also FDIC v. World University, Inc., 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are aimed at *re*consideration, not initial consideration.") (emphasis in original) (internal quotations omitted).

In light of the "narrow purposes" of the motion, the judicial system's interest in the finality of judgments, and the conservation of judicial resources, Rule 59(e) motions "typically are denied." Miller v. Bell, 655 F. Supp.2d 838, 844 (E.D. Tenn. 2009) (internal quotations omitted). In his Rule 59(e) Motion, Dr. Block does not discuss, or tie his argument to, the Rule 59(e) standard of review, but it appears that Dr. Block believes the Court needs to prevent manifest injustice or that the Court made a clear error of law or fact.

> Regarding the meaning of the term "manifest injustice," it has been noted that
>
> There is no judicial consensus . . . but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable . . . A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

In re Roemmele, 466 B.R. 706, 712 (Bankr. E.D. Pa. Mar. 14, 2012) (internal quotations omitted). "A similar application of the dictionary definition to a clear error of law or fact requires an error that is 'plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" In re Titus, 479 B.R. 362, 368 (Bankr. W.D. Pa. 2012) (quoting In re Oak Park Calabasas Condominium Ass'n, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003)).

## ANALYSIS

### I. Dr. Block's Time Barred Claims

The Court found Dr. Block's claims in regards to his demotion from Professor to Associate Professor time barred, because the demotion occurred more than 300 days preceding Dr. Block's EEOC charge complaining of this demotion. More specifically, the EEOC charge was filed on November 20, 2013, and therefore any events occurring before January 24, 2013 (300 days prior) are time barred. The Court found that Dr. Block was demoted in February 2012, based on Dr. Block's own admission in his Complaint. (Docket No. 1 at 4). Moreover, Dr. Block admitted he was notified of his demotion in February 2012 in Plaintiff's Response to Defendant's Statement of Undisputed Material Facts. (Docket No. 96 at 5).

Dr. Block argues that the Court was incorrect in finding this claim time barred for two main reasons. First, he claims certain aspects of the factual background create a genuine issue of material fact. For example, Dr. Block argues that his 2012-2013 employment contract appointing him a full Professor shows that his demotion didn't occur until the contract expired in June 2013. Dr. Block also argues that he did not experience a change in salary when he was demoted in February 2012, and therefore Dr. Block didn't know that he had been demoted until much later (when his 2012-2013 contract expired). (Docket No. 141 at 2-3). He argues that because June 2013 is within the 300 days immediately preceding his EEOC charge, the demotion claim is therefore not time barred.

These factual arguments, however, do not change the fact that Dr. Block admitted that he knew about his demotion in February 2012 when he received a letter from Dean Janet Southerland "advising him that he had been appointed as an Associate Professor instead of Professor." (Docket No. 1 at 4). Nor do they change the fact that Dr. Block used the title

"Associate Professor" in his signature block in three separate documents in January 2012. (Docket No. 100-3 at 2-4). Finally, they do not change the fact that Dr. Block applied for a promotion from Associate Professor to Professor in the fall of 2012 and that Dr. Block admits he was notified that his application for promotion had been "Disputed" in a letter to him dated November 1, 2012. (Docket No. 96 at 12-13). These objective actions show that Dr. Block was aware of his Associate Professor position as early as January 2012.

To any extent that Dr. Block is arguing that his demotion was not "final" until June 2013, the Sixth Circuit explicitly rejected the "ultimate employment decision" standard in White v. Burlington Northern & Santa Fe Ry., 364 F.3d 789, 802 (6th Cir. 2004). "[T]he words 'discriminate against' [in Title VII] literally mean '*any kind* of adverse action.'" White, 364 F.3d at 802 (emphasis in original) (quoting Mattei v. Mattei, 126 F.3d 794, 805 (6th Cir. 1997)). "Materially adverse changes in the terms and conditions of employment include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, *a less distinguished title*, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Kuhn v. Washtenaw Cty., 709 F.3d 612, 625 (6th Cir. 2013) (emphasis added) (quoting Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th Cir. 2007)). Therefore, Dr. Block's argument that the decision to demote him may not have been "final" until June 2013 does not change the fact that Dr. Block learned of his demotion in February 2012 when he received a letter from the administration. The demotion constituted an adverse action. This adverse action was more than 300 days before his filing of the EEOC complaint. Consequently, the Court did not commit clear error of law or fact, nor will manifest injustice ensue, in finding Dr. Block's claims time barred.

Dr. Block's second reason that the Court was incorrect in ruling his claim was time barred is that "the doctrine of equitable tolling also applies to prevent Defendant Meharry from raising this statute of limitations defense." (Docket No. 141 at 5). As the Court stated above, Rule 59(e) motions are not to be used to raise arguments that could have or should have been brought prior to judgment. Dr. Block claims that he did not waive "equitable estoppel and/or equitable tolling by failing to reference this issue" previously because he discussed, in his Response in Opposition to Meharry's Motion for Summary Judgment, "various misrepresentations made by Defendant Meharry which mislead [sic] Dr. Block into believing that he continued to hold the rank of professor." (Docket No. 145 at 1).

However, Dr. Block did not sufficiently raise the issues of equitable tolling or equitable estoppel in his Complaint or in his Response in Opposition to Meharry's Motion for Summary Judgment. To be charitable, Dr. Block's Response in Opposition was not exactly a model of clarity; it did not mention "equitable," "tolling," or "estoppel," and any arguments about his being misled by Meharry do not put a reasonable party on notice that Dr. Block is making an equitable tolling and/or estoppel argument. See Adams v. Philip Morris, Inc., 67 F.3d 580, 583 (6th Cir. 1995) ("We ordinarily consider issues not fully developed and argued to be waived."); Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("[W]e consider waived arguments confusingly constructed and lacking in coherence. . . . Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.") (internal quotations and citations omitted); cf Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC Grp. Health Benefit Plan, 581 F.3d 355, 372 n.7 (6th Cir. 2009) (discussing how the rationale underlying deeming arguments waived when raised for the first time in reply briefs "relates to the other party's opportunity to respond"). Consequently,

the Court's failure to consider the equitable estoppel or tolling arguments on summary judgment did not constitute clear error of law or fact, nor will it result in manifest injustice. Hurst v. Fannie Mae, 642 Fed. Appx. 533, 542 (6th Cir. 2016) ("The district court . . . did not abuse its discretion by denying Plaintiff's motion on the grounds that the motion raise[d] arguments which could, and should, have been made before judgment issued.") (internal quotations omitted).

## II. Department Chair Issues

The Court granted summary judgment to Meharry on Dr. Block's discrimination and retaliation claims concerning demotion from Chair of the Endodontics Department because, although Dr. Block may have established a prima facie case under Title VII, Meharry presented evidence that Dr. Block was terminated due to unprofessional behavior, and Dr. Block failed to show that this decision was pretextual. (Docket No. 134 at 14-20). Dr. Block cites a laundry list of reasons he believes this decision was incorrect; the Court will only discuss the following few, as the remaining reasons do not suggest pretext on the part of Meharry, nor do they suggest the Court completely disregarded credible evidence in failing to explicitly address them. See In re Titus, 479 B.R. at 368.

Dr. Block makes a number of factual arguments, such as the following: that he had high marks on his performance evaluations, (Docket No. 141 at 6); that Meharry allegedly misinformed the EEOC about "which Dean demoted Plaintiff Block," (Id.); and that another Caucasian man, Dr. Kisby, was also fired for unprofessionalism, (Id.). However, these factual arguments fail to show any clear error of law or fact on the part of the Court or that manifest injustice will ensue. Furthermore, they fail to show any pretext on the part of Meharry, as Meharry's proffered reason for removing Dr. Block's Chair designation was *his* numerous

6

behavioral issues outside the classroom, which were documented by Meharry and subsequently laid out in the Court's summary judgment memorandum and order.

Dr. Block also argues that there were no "professionalism and behavior standards applicable to department chair positions at Defendant Meharry," (Docket No. 141 at 6), and that Meharry's decision to remove his designation as Chair on professionalism grounds was therefore pretext. This argument also fails; the Court did not commit clear error when it refused to impose a requirement that employers must explicitly inform professional adults that certain behavior— such as sending rude emails and yelling at administrative assistants—may result in disciplinary action.

Dr. Block next argues that the Court failed to consider statements allegedly made by Dr. Matthews-Juarez as circumstantial evidence. As stated in the Court's summary judgment memorandum,

> [Dr. Block] claims that Dr. Matthews-Juarez "cautioned Plaintiff Block when he complained about discrimination that the leadership and control of Defendant Meharry was African-American warning that Plaintiff Block needed to watch his step or go back into private practice." (Docket No. 95 at 27). The allegation that Dr. Matthews-Juarez made these statements is not supported anywhere else in the record, and Dr. Matthews-Juarez denies making them.

(Docket No. 134 at 15). The Court also stated that "Dr. Matthews-Juarez was not a decision maker regarding the chairs of the departments" and left Meharry three months before Dr. Block was demoted. (Docket No. 134 at 15-16). Considering these facts along with the number of behavioral issues Dr. Block experienced during his time at Meharry, Dr. Matthews-Juarez's statements, assuming she made them, do not suggest pretext on the part of Meharry. Moreover, Dr. Block would seem to be arguing that Dr. Matthews-Juarez's alleged statements show pretext under the second possible way in which to show pretext: "that the proffered reasons did not actually motivate the employer's action." (Docket No. 134 at 14) (quoting Johnson v. Buddy's

Bar-B-Q, Inc., 2015 WL 1954454, *4 (E.D. Tenn. Apr. 29, 2015)). But this category "requires that the plaintiff admit the factual basis underlying the employer's proffered explanation and further admit that such conduct could motivate dismissal," Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 349 (6th Cir. 2012) (citing Manzer v. Diamond Shamrock Chemicals. Co., 29 F. 3d 1078, 1084 (6th Cir. 1994)), neither of which Dr. Block has done. Consequently, these alleged statements by Dr. Matthews-Juarez, unsubstantiated by any person other than Dr. Block, fail to create a genuine issue of material fact and fail to show pretext on the part of Meharry's decision makers when they decided to remove Dr. Block's Chair designation three months after Dr. Matthews-Juarez left.

Dr. Block also argues the Court erred in failing to find bad faith on the part of Meharry when Meharry failed to turn over performance evaluations for the school year 2012-2013[1] for African-American professors as ordered. Magistrate Judge Newbern ordered Meharry to produce the requested evaluations by October 10, 2016, or to stipulate to their nonexistence if Meharry determined they do not exist. (Docket No. 110 at 7). This Order was nearly two months after briefing ended on Meharry's Motion for Summary Judgment. Dr. Block now claims that Meharry failed to comply with this Order compelling them to produce certain documents or so stipulate to their nonexistence, yet he filed nothing between the time of the noncompliance and the summary judgment decision that would alert the Court to Meharry's noncompliance. Regardless, Meharry's noncompliance does not change the summary judgment outcome, nor does it suggest clear error of law or fact. "Meharry produced 2012-2013 evaluations for Dr. Charles Albury, Dr. Kim Perry, Dr. Gregory Stoute, Dr. Sharon Carter and

---

[1] Dr. Block further argues that Meharry "failed to produce any evaluations for Department Chairs performed in 2013-2014 even though it promised to do so." (Docket No. 141 at 10). However, the Magistrate Judge's Order states that "[i]n the hearing, Block's counsel agreed to withdraw his request for the 2013-2014 academic year evaluations." (Docket No. 110 at 6). Consequently, the Court will not consider Meharry's failure to produce evaluations from the 2013-2014 school year.

8

Dr. Pandu Gangula [and] . . . for Dr. Kristen Darville, noting that it was not in possession of any 2012-2013 evaluations for Dr. James Tyus, Dr. Gibson Johnson and Dr. Sandra Harris." (Docket No. 143 at 11). Dr. Block takes issue with this production based on the fact that these evaluations seem to be self-evaluations instead of evaluations performed by the administration and because Meharry's counsel told Dr. Block's counsel in an email that Meharry would produce "the evaluations of the Dental School's chairs for the years 2011, 2012, and 2013." (Docket No. 145-2). Further, Dr. Block argues that bad faith is evident because depositions of Meharry's faculty discussed the regularity with which faculty evaluations were performed and who signed off on them. (Docket No. 141 at 8-9).

The deposition testimony, however, does not suggest that any specific evaluations exist that have not already been turned over to Dr. Block. The deposition testimonies of Meharry faculty discuss the evaluation process generally, saying that they are "usually done following the first of January," that they "are to be done on an annual basis," that the Dean's "chief of staff would have kept the file," and that the performance review files "were on the server." (Docket No. 141 at 8-9). Further, the email from Meharry's counsel to Dr. Block's counsel does not suggest bad faith; it suggests an attempt to resolve discovery disputes before Meharry's counsel was aware that certain evaluations never existed. Although Dr. Block is dissatisfied that certain performance evaluations signed by the Dean do not exist, the Court does not find bad faith on the part of Meharry.

Finally, Dr. Block argues that the Court incorrectly concluded that Dr. Williams was not a fair comparator. The Court decided that Dr. Williams was not a fair comparator because Dr. Block only pointed to one instance in which another professor told Dr. Williams that she thought Dr. Williams was handling a situation unprofessionally. (Docket No. 95 at 3 & 18) (referencing

page 59 of Dr. Williams' deposition where he discusses the incident with the other professor). The Court stated that "[a]side from this one instance of another professor telling Dr. Williams that she felt his behavior to be unprofessional, there is no evidence that Dr. Williams had any behavioral issues." (Docket No. 134 at 18). This was in stark contrast to Dr. Block. (Docket No. 134 at 18-19). Now, Dr. Block submits an affidavit, signed by himself, dated sixteen days after the entry of summary judgment, to allege that "Dr. Williams had a reputation for and lost his temper on numerous occasions during these meetings. He raised his voice often. There were other behavioral issues involving Dr. Williams including an inappropriate relationship with a female student." (Docket No. 138-1 at 3). As noted above, Rule 59(e) motions are not the appropriate vehicle to bring arguments that could have or should have been raised before judgment. Consequently, the Court will not consider this belated argument.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Alter or Amend the Court's Summary Judgment Order will be denied. (Docket No. 137).

A separate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE